# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DONALD COVINGTON,**

      **Plaintiff,**

**v.**                                                       **Civil Action No. 2:10cv110**
                                                                          **(Judge Bailey)**

**DR. DAVID PROCTOR**

      **Defendant.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this case on September 17, 2010, by filing a civil rights complaint and a Motion for Preliminary Injunction. Shortly thereafter, he was granted permission to proceed as a pauper, assessed the full $350 filing fee, and directed to pay an initial partial filing fee of $9.93, The plaintiff paid his initial partial filing fee on December 8, 2010.

On, December 20, 2010, the undersigned conducted a preliminary review of this matter and entered a Report and Recommendation which recommended that the plaintiff's claim against Wexford Health Sources be Dismissed with Prejudice but that the plaintiff's claim against Dr. Proctor proceed. In addition, it was recommended that the plaintiff's Motion for Preliminary Injunction be denied. On January 3, 2011, the plaintiff filed objections to the Report and Recommendation. On January 24, 2011, the Honorable John Preston Bailey entered an Order dismissing the plaintiff's claims against Wexford Health Sources, denying the plaintiff's Motion for Preliminary Injunction, and ordering that the plaintiff's claims against Dr. Proctor proceed. Accordingly, Judge Bailey directed the Clerk of Court to serve Dr. Proctor with a copy of a twenty-one (21) day summons and the Complaint through the United States Marshal Service.

Dr. Proctor was served on February 1, 2011. On February 17, 2011, he filed an answer to the complaint. On March 16, 2011, a First Order and Notice Regarding Discovery and Scheduling was entered. On August 11, 2011, defendant Dr. Proctor filed a Motion for Summary Judgment with an exhibit and supporting memorandum. On August 12, 2011, a Roseboro Notice was issued to the plaintiff by certified mail, return receipt requested. Said Notice was returned unclaimed on August 31, 2011. This case is therefore before the undersigned for a Report and Recommendation on Dr. Proctor's Motion for Summary Judgment.

## II. Contentions of the Parties

### A. The Complaint

In his complaint, the plaintiff asserts that in late October or early November 2009, he began experiencing sever pain, swelling, numbness and burning in his scrotum and testicles. He initially attributed these symptoms to a weightlifting injury and sought medical treatment at the Huttonsville Correctional Center ("HCC").[1] The plaintiff was seen by Dr. Proctor and was diagnosed with epididymitis. Although the plaintiff was prescribed an antibiotic, he claims it neither cured his infection nor relieved his symptoms. Therefore, he returned to the medical department for further treatment. At his follow-up visit, the plaintiff was allegedly told by a nurse that an MRI was required to properly diagnose epididymitis. Therefore, the plaintiff made a request for an MRI or ultrasound. According to the complaint, those requests were denied. In fact, the plaintiff asserts that was denied any further treatment for his condition. More specifically, he alleges that the last time he received any medication was in April of 2010, even though he has made several written requests for treatment. The plaintiff also asserts that without proper treatment, he is at risk for serious and long-term

---

[1] Someime prior to May 3, 2011, the plaintiff was apparently released from custody. (Dckt. 29).

complications, including sterility. Moreover, he alleges that he now suffers from further symptoms like severe abdominal pain. In addition to the preliminary injunction, which has been denied, the plaintiff seeks compensatory and punitive damages.

**B. Dr. Proctor's Motion for Summary Judgment**

In his Motion, Dr. Proctor maintains that he is entitled to judgment in his favor because there is no genuine issue as to any material fact. More specifically, Dr. Proctor maintains that he was not deliberately indifferent to the plaintiff's medical needs.

### III. Standard of Review

**A. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party

opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

## IV.   Analysis

The undersigned notes although a discovery order was entered, no discovery was conducted by either party. However, the Court has before it the sworn Affidavit of Dr. Proctor. That Affidavit indicates that Dr. Proctor is a physician at HCC and has provided care and treatment to the plaintiff in that capacity. The Affidavit also establishes that although the plaintiff alleges that he was originally diagnosed with epididymitis in late October or early November 2009, he has suffered from that condition off and on since November 2007. According to Dr. Proctor, epididymitis is a benign inflammation in one of the tubules around the testicle. In addition, Dr. Proctor notes that it is very common and normally has no significant long term consequences, such as sterility. Dr. Proctor maintains that diagnosis of epididymitis is based upon physical examination and special imaging procedures such as MRS or Ultrasounds are not required. Dr. Proctor acknowledges that occasionally, a case will become chronic, requiring a more extended course of treatment, with treatment usually

4

consisting of a combination of antibiotics and anti-inflammatory medications. Dr. Proctor maintains that the plaintiff was treated for epididymitis when needed between 2007 and 2010. Moreover, Dr. Proctor notes that he personally examined the plaintiff for any reoccurrence of epididymitis (or anything else) on May 26, 2010, September 27, 2010, December 6, 2010, and on January 14, 2011 and found no evidence of any reoccurrence. Additionally, while Dr. Proctor was on vacation, Dr. Emil Dameff examined the plaintiff in June of 2010 and found no abnormalities.

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[2]

---

[2] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997)

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." *Id.* at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

In the instant case, even if the plaintiff could establish that epididymitis is a serious medical condition, satisfying the objective component of his Eighth Amendment claim, he cannot satisfy the subjective component of his Eighth Amendment claim, because there is no evidence that Dr. Proctor treated him with deliberate indifference. The uncontroverted Affidavit from Dr. Proctor establishes

6

that the plaintiff was treated for his epididymitis and has not had a reoccurrence since May 26, 2010. At best, it appears that the plaintiff simply has a disagreement with Dr. Proctor as to the appropriate method of diagnosing and treating said condition. However, so long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation. See Chance v. Armstrong, 143 F.3d 698, 703 (citing Dean v. Coughlin, 804 F.2d 207, 215 (2nd Cir. 1986) and Estelle 429 U.S. at 106.

In addition, to the extent that the plaintiff may be seeking to establish a medical negligence claim, he must comply with West Virginia law and establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability

7

> upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va. 2004).[3]

With regard to the appropriate standard of care, plaintiff has completely failed to sustain his burden of proof. Plaintiff does not assert, much less establish, the standard of care for the diagnosis or treatment of epididymitis. Under the circumstances of this case, plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant(s)' breach of the duty of care. Moreover, there is nothing in the complaint which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6. Accordingly, even if this court has supplemental jurisdiction over the plaintiff's potential state law claims for medical malpractice, summary dismissal is appropriate.

---

[3] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

## V. Recommendation

For the reasons stated, the undersigned recommends that defendant Dr. Proctor's Motion for Summary Judgment (dckt. 30) be **GRANTED**, and that the plaintiff's complaint be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

**DATED:** September 21, 2011

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE